UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC S. BRYANT,

       Plaintiff,                            Case No. 20-12214

v.                                          Honorable Nancy G. Edmunds

ALEJANDRO MAYORKAS,

       Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [50], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [52], AND GRANTING DEFENDANT'S MOTIONS TO EXCLUDE TESTIMONY [55, 62]**

Plaintiff Eric S. Bryant brings this employment discrimination case under Title VII of the Civil Rights Act ("Title VII") against Defendant Alejandro Mayorkas, Secretary of U.S. Department of Homeland Security. His race discrimination and retaliation claims stem from his demotion while employed with U.S. Customs and Border Protection ("CBP"). The matter is before the Court on cross-motions for summary judgment (ECF Nos. 50, 52) and Defendant's motions to exclude testimony (ECF No. 55, 62). All four motions are fully briefed. (ECF Nos. 56, 57, 64, 65, 66, 67, 69, 70.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be decided on the briefs and without oral argument. For the reasons below, the Court DENIES both motions for summary judgment, and GRANTS Defendant's motions to exclude testimony.

**I.    Background**

Plaintiff is an African-American male who began working for the U.S. Customs Service, CBP's predecessor agency, in 2002. After CPB was formed, he was employed as a CBP officer ("CBPO") at the Port of Detroit.

1

In 2010, Plaintiff filed an EEOC complaint, alleging that he was denied training opportunities based on his race, but he withdrew that complaint after mediation. In 2016, Plaintiff applied for and was denied a permanent promotion to Supervisory CBPO ("SCBPO"). On July 7, 2016, Plaintiff filed another EEOC complaint, alleging that CBP discriminated against him based on his race and retaliated against him by not selecting him for the promotion. (ECF No. 52-2.) CBP's Director of Field Operations for the Detroit field office, Christopher Perry, and then Port-Director for the Port of Detroit, Marty Raybon, were aware of the complaint. A final agency decision was issued in March 2018, concluding that Plaintiff failed to prove discrimination. (ECF No. 52-6.) Plaintiff did not appeal that adverse decision.

While Plaintiff's 2016 EEOC charge was still pending, on March 5, 2017, Plaintiff was promoted to supervisory CBP officer. This promotion included an eighteen-month probationary period. In July 2017, Plaintiff's co-workers claimed to have observed Plaintiff asleep on duty twice. The first instance was on July 20, 2017, when SCBPO Joseph Morin was in the supervisor's office discussing a case with CBPOs Jeffrey Beswick and Christopher Stolicker. All three officers testified they observed Plaintiff sitting with his head down and seemingly asleep. (ECF Nos. 50-9, PageID.834; ECF No. 50-10, PageID.880; ECF No. 50-11, PageID.913.) The second instance took place the next day. (ECF No. 50-9, PageID.841.) Morin used his cell phone to take a photograph of Plaintiff. The photo purportedly depicts Plaintiff slouched in his chair with his head down, appearing to be asleep. (ECF No. 50-6, PageID.793.) At approximately 11:30 in the morning, Morin sent the photo by text message to SCBPO Mathew Parker at the Detroit-

Canada tunnel. Chief CBPO James Williams observed the photo on Parker's phone, asked Parker to forward him the photo, and then reported it to Port management.

Morin notified his supervisor, Chief CBPO Karene Smith, that he had taken the photo of Plaintiff sleeping at his desk. (ECF No. 50-6, PageID.794-95.) Smith called Watch Commander Mark Hoying, who was already aware of the situation and advised her that a counseling to Plaintiff would be sufficient. Smith called Plaintiff to her office and confronted him with the photo and allegations. She told Plaintiff that if he was asleep, she would reprimand him. Smith received a call from another watch commander later that evening and he told her to stand down on any disciplinary action and that it would be handled at a later date.

Port management took statements from Smith, Williams, Morin, Parker, Beswick, and Stolicker. (ECF No. 50-6.) Management also requested a memo from Plaintiff, who stated that it was his "custom to reflect and or silently pray throughout the day" and that he "can see how this may be misinterpreted as sleeping." (*Id.* at PageID.792.) He also stated that he "sometimes input[s] inspection results in ELMOp," which is a handheld device the size of a cell phone, while holding it in his lap, which "can also be misconstrued as being asleep." To the question of whether he was sleeping on duty, he stated "I was more than likely doing one of the aforementioned activities."

After reviewing the information, Port Director Raybon determined that Plaintiff was sleeping on duty. Sleeping on the job or inattention to duty is a violation of CBP policy. Raybon then forwarded the matter to Perry. Perry determined that Plaintiff was inattentive and possibly asleep on July 20, 2017. He further determined that Plaintiff was asleep on duty on July 21, 2017. He concluded that Plaintiff had not satisfactorily fulfilled the

3

requirements of his probationary period. He advised Plaintiff that he would be removed from the position of SCBPO and returned to the position of CBPO. (ECF No. 52-7.) The August 22, 2017 letter informing him of such stated the following:

> The supervisory probationary period is a tentative and highly significant step in the examining process for career employment. During this period, supervisors are evaluated to determine whether they will be able to fulfill the requirements of their position. You have not satisfactorily fulfilled these requirements. As a Supervisor CBPO, you are held to the higher standard of conduct both on and off duty. You have tremendous influence on your employees, as you are their link to the management chain. Employees look to you for what is expected of them as you set the climate for their behavior. Because your words and actions are so influential with your employees, you are expected to behave in a manner that is above reproach. Your actions as noted above are unacceptable and will not be tolerated.
> Based on your actions, I have lost confidence in your ability to be an effective supervisor. Therefore, I have decided to remove you from your position as a supervisor.

(*Id.* at PageID.1314.) On October 10, 2017, Plaintiff filed a formal complaint of discrimination, alleging that he was removed from his supervisory position based on race and retaliation. The agency concluded that Plaintiff failed to prove discrimination. (ECF No. 50-7.) Plaintiff then brought this action.

During this litigation, Plaintiff has identified a white CBP employee named Justin who was allegedly treated differently than him for sleeping on duty. Justin testified regarding an incident during which he fell asleep in an agency pursuit vehicle in 2010. (ECF No. 50-21, PageID.1225.) He stated he was an officer at the time and did not discuss the incident with anyone in management. Justin was promoted to supervisor in January 2014.

Raybon testified that he had no knowledge of Justin falling asleep in an agency vehicle. (ECF No. 50-13, PageID.1009-10.) Perry learned of the incident two days prior to his deposition in this case. (ECF No. 50-18, PageID.1144.) Upon learning of these

4

allegations, Perry notified the current Port Director for the Port of Detroit, who reported the allegations to CBP's joint intake center. A June 23, 2021, email to the center stated that Justin "self-reported to CBP Office of Chief Counsel (OCC) he fell asleep inside of a government vehicle while on duty approximately six years when he was a [sic] officer (CBPO)." (ECF No. 50-23.) The email further states that "CBP OCC notified the Detroit Field Office (DFO) who in turn notified the Detroit Port Director (cc'd here)." (*Id.*) During his deposition, Justin denied stating that he fell asleep "six years ago." (ECF No. 50-21, PageID.1226.) CBP referred the matter for investigation by an outside factfinder. Based on the investigation, it was determined that Justin fell asleep in a government vehicle while working on the Pursuit Team at the Ambassador Bridge approximately eleven years prior to that date. (ECF No. 50-25.) On August 26, 2021, CBP issued a written letter of counseling to Justin. (*See id.*)

## II.    Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party

bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)). The standard of review for cross-motions for summary judgment "does not differ from the standard applied when a motion is filed by only one party to the litigation." *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

### III. Discrimination

Both Plaintiff and Defendant move for summary judgment on Plaintiff's discrimination claim.

#### A. Relevant Framework

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e-2(a)(1). When there is no direct evidence of discrimination, the claim is analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was treated differently than a similarly situated employee outside his protected class. *See McDonnell Douglas*, 411 U.S. at 802; *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). The burden of proof then shifts to the employer to

articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once the employer articulates such a reason, the burden of proof returns to the plaintiff to rebut the proffered reason by showing it was a pretext for discrimination. *Id.* at 804. A plaintiff may show pretext by demonstrating that the proffered reason 1) had no basis in fact, 2) did not actually motivate the adverse action, or 3) was insufficient to warrant the action. *Chen*, 580 F.3d at 400.

**B.    Analysis**

**1.    Prima Facie Case**

Defendant only disputes the fourth prong of Plaintiff's prima facie case—that Plaintiff has shown he was treated differently than a similarly situated employee outside his protected class. Plaintiff points to Justin as a similarly situated white employee who was treated differently for sleeping on duty.

To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citations omitted). Defendant argues that Plaintiff was not similarly situated to Justin because Justin was an officer, not a supervisor, when he fell asleep on duty; there is no evidence management was made aware of Justin sleeping at the time; and Justin was not on probation when this took place.

Plaintiff suggests Justin may have similarly been a supervisor when he fell asleep. He points to the June 23, 2021 email, which states Justin "self-reported to CBP Office of

Chief Counsel (OCC) he fell asleep inside of a government vehicle while on duty approximately six years ago when he was a [sic] officer (CBPO)." (ECF No. 50-23.) Justin was promoted to supervisor in January 2014, so he would have been a probationary supervisor, not an officer, "six years ago." But as Defendant argues, this statement contains multiple layers of hearsay. While courts may rely on hearsay testimony at the summary judgment stage if the evidence can be produced in an admissible form at trial, *see Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 424 n.8 (6th Cir. 2021), Justin denies making this statement, (ECF No. 50-21, PageID.1226). Thus, there is no reason to believe there will be any admissible evidence forthcoming at trial indicating Justin was a supervisor when he fell asleep. The remaining evidence in the record suggests the incident took place when Justin was still an officer.

Defendant also argues that there is no evidence this incident was reported to management at the time. Both Perry and Raybon testified that they did not know of Justin sleeping on duty prior to the filing of this lawsuit. (ECF Nos. 50-18, PageID.1144; ECF No. 50-13, PageID.1009-10.) Plaintiff argues that in light of another officer's testimony that he discussed it with one other co-worker, although admittedly not a manager, (ECF No. 57-3, PageID.1596), and the fact that Justin's supervisor at the time was Justin's now-deceased uncle, it can be inferred that management was made aware of the incident. The Court finds this argument speculative.[1] But while the record indicates that Justin was an officer when he fell asleep on duty and management may not have been aware of the

---

[1] Plaintiff also argues that it was "common knowledge" that Justin fell asleep on duty. He avers that a picture of Justin sleeping has been passed around and that he received a tip from an anonymous supervisor to this effect. However, "rumors, conclusory allegations and subjective beliefs" are insufficient to raise a question of fact. *See Mitchell*, 964 F.2d at 585.

8

incident at the time, it is undisputed that management learned during the pendency of this lawsuit that Justin fell asleep in a pursuit vehicle years ago. An investigation was conducted, and Justin, then a supervisor, received only a written counseling.[2]

While Plaintiff was still serving a probationary period when he was demoted, *see Elgabi v. Toledo Area Reg'l Transit. Auth.*, 228 F. App'x 537, 542 (6th Cir. 2007) (finding "probationary status to be a relevant consideration for the similarly-situated inquiry"), "exact correlation" is not required for two employees to be similarly situated, only that the employees be similarly situated in all "'*relevant* aspects,'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Here, Defendant's Rule 30(b)(6) representative testified that probationary employees do not have the right to the progressive disciplinary system, but she also testified that CBP's "Table of Offences" could be used for both probationary and permanent supervisors. (ECF No. 50-17, PageID.1115.) That table indicates that the appropriate discipline for a first offense of sleeping on the job ranges from a written reprimand to a 3-day suspension. (ECF No. 50-25, PageID.1244.) So, Justin received the least severe form of discipline. This is in contrast to Plaintiff, who nobody disputes could have been simply reprimanded—consistent with Hoying's initial recommendation—or suspended but was instead demoted. In other words, the distinction between probationary and permanent supervisors alone does not explain why Plaintiff and Justin were treated differently. Thus, there is a question of fact as to whether Plaintiff was treated less favorably than a similarly situated white employee for the same conduct.

---

[2] There is testimony in the record regarding a second incident in which Justin allegedly fell asleep on duty in late 2020. (ECF No. 57-3, PageID.1600.) But there is nothing in the record to suggest that management was ever made aware of this.

The evidence is far from overwhelming, but Plaintiff may be able to establish a prima facie case of discrimination.

### 2. Pretext

Defendant argues that even if Plaintiff could establish a prima facie case of discrimination, there was a legitimate, non-discriminatory reason for Plaintiff's demotion—that he was sleeping while on duty in violation of CBP policy. Plaintiff argues that this reason was a pretext for discrimination.

First, Plaintiff denies that he was sleeping on duty and argues that the photo and witness statements were an insufficient basis from which to conclude that he was sleeping. But under the honest belief rule, "to establish pretext, 'the plaintiff must allege more than a dispute over the facts upon which [the adverse act] was based. He must put forth evidence which demonstrates that the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action.'" *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 349 (6th Cir. 2013) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)). To determine whether the employer had an honest belief in the proffered basis for termination, courts look at whether it "has established a reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 349 (citations omitted). Courts "do not require that the decisional process used by the employer 'be optimal or that it left no stone unturned.'" *See id.* at 349 (quoting *Seeger v. Cincinnati Bell Tell Col.*, 681 F.3d 274, 285 (6th Cir. 2012)). "'Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Id.* Here, the record supports Defendant's assertion that Plaintiff was demoted following an investigation that

10

included a consideration of the photo, witness statements, and statement provided by Plaintiff himself, which led Defendant to conclude Plaintiff was sleeping on duty. Thus, Plaintiff denying he was asleep does not show pretext or create an issue of fact as to pretext.[3]

Plaintiff's argument, discussed above, regarding Justin engaging in the same conduct but receiving a lesser punishment does, however, bear on the issue of pretext. *See McDonnell Douglas*, 411 U.S. at 804 (noting that comparator evidence is "[e]specially relevant" to a showing of pretext); *see also Strickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021) (noting that demonstrating pretext involves "raising the question of why the plaintiff was singled out for an adverse employment action") (internal quotation marks and citation omitted). Because the Court finds a reasonable jury could conclude Plaintiff was treated less favorably than Justin for the same conduct, there is a genuine issue of fact regarding pretext that precludes summary judgment in favor of either party on Plaintiff's discrimination claim.

**IV. Retaliation**

Both Plaintiff and Defendant also move for summary judgment on Plaintiff's retaliation claim.

---

[3] In support of his argument regarding not being asleep or inattentive, Plaintiff has provided a report from a forensic expert, who has opined that the photo could not be authenticated and that he was unable to verify if the individual's eyes were open or shut from the photo (ECF No. 52-9), as well as a report from a psychiatrist, who has opined in part that "observation alone is not sufficient to determine someone's level of consciousness or level of attention" (ECF No. 52-8). Defendant moves to strike these opinions as both irrelevant and unreliable. (ECF Nos. 55, 62.) In light of the Court's conclusion that Plaintiff's argument regarding whether he was really asleep is insufficient to raise a question of fact as to pretext due to the honest belief rule, the Court finds these opinions irrelevant and grants Defendant's motions to strike.

### A. Relevant Framework

Under Title VII's retaliation provision, it is unlawful for an employer to discriminate against an employee because that employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [Act]." 42 U.S.C. § 2000e-3(a) In order to establish retaliation under Title VII, the plaintiff must prove that 1) he engaged in protected activity, 2) his employer knew he engaged in protected activity, 3) an adverse employment action was subsequently taken against him, and 4) there was a causal connection between the protected activity and the adverse employment action. *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). When there is no direct evidence of retaliation, a plaintiff's claim is analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp.*, 411 U.S. at 802-04, which is described above.

### B. Analysis

#### 1. Prima Facie Case

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because there is no evidence his protected activity was causally connected to the demotion. Plaintiff argues there is enough evidence to establish causation.

"To prove causation in a Title VII retaliation case, a plaintiff must show that the employee's protected activity was a 'but for' cause of the employer's adverse action against [him], meaning the adverse action would not have occurred absent the employer's desire to retaliate." *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (citation omitted). At the prima facie stage, this burden "'is not onerous' and may be satisfied through 'evidence that defendant treated the plaintiff differently from similarly

12

situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.'" *Strickland*, 995 F.3d at 511 (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Here, Plaintiff filed his EEOC complaint in July 2016 but was both promoted (in March 2017) and later demoted (in August 2017) while his complaint was still pending. Thus, the timeframe does not support an inference of retaliation. But in light of the Court's finding that there is a question of fact surrounding whether a similarly situated employee was treated differently, there is enough evidence to create a question of fact as to causation. Defendant cites to the "same actor inference," "which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). Perry is the one who both promoted and demoted Plaintiff here, but the same actor inference only permits a factfinder to draw this inference and it is not mandatory. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573-74 (6th Cir. 2003) (holding the same actor inference "insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact"). Thus, Plaintiff's retaliation claim survives the prima facie stage.

### 2. Pretext

Defendant argues that even if Plaintiff could establish a prima facie case of retaliation, there was a legitimate non-retaliatory reason for the demotion—that he was sleeping while on duty in violation of CBP policy. Plaintiff argues this proffered reason was a pretext for retaliation.

For the same reasons discussed in the context of Plaintiff's discrimination claim, there is a genuine issue of fact as to pretext.[4]  Thus, the Court denies both motions for summary judgment as to Plaintiff's retaliation claim.

## V.     Conclusion

For the foregoing reasons, the parties' cross-motions for summary judgment are DENIED, and Defendant's motions to exclude testimony are GRANTED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 22, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 22, 2022, by electronic and/or ordinary mail.

s/William Barkholz in place of Lisa Bartlett
Case Manager

---

[4] As in the context of the discrimination claim, the Court does not rely on Plaintiff's argument regarding whether he was actually sleeping to find an issue of fact as to pretext. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) ("[A] case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the employer's grounds" for the adverse act.).